UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
WAITING ROOM SOLUTIONS, LIMITED
LIABILITY LIMITED PARTNERSHIP,

                               Plaintiff,

     - against -

EXCELSIOR INSURANCE COMPANY and
LIBERTY MUTUAL GROUP INC.,

                             Defendants.
-------------------------------------------------------------x

**OPINION & ORDER**

No. 19-CV-7978 (CS)

Appearances:

Chelsea A. Four-Rosenbaum
Catania, Mahon & Rider, PLLC
Newburgh, New York
*Counsel for Plaintiff*

Marshall T. Potashner
Jaffe & Asher LLP
New York, New York
*Counsel for Defendants*

Seibel, J.

      Before the Court is Defendants' motion to dismiss for failure to state a claim.  (Doc. 17.)

Also pending, in this case removed from New York Supreme Court, Orange County, is

Plaintiff's cross-motion to dismiss for lack of subject matter jurisdiction.  (Doc. 20.)  For the

reasons stated below, Plaintiff's motion is DENIED and Defendants' motion is GRANTED.

I.    **BACKGROUND**

A.    **Facts**

For purposes of Defendants' motion to dismiss for failure to state a claim, I accept as true the facts, but not the conclusions, set forth in the Complaint.  (Doc. 1-1 ("Compl.").)[1]  Plaintiff Waiting Room Solutions, Limited Liability Limited Partnership ("Waiting Room") is a limited liability limited partnership organized under the laws of the U.S. Virgin Islands with its principal place of business in New York.  (Compl. ¶ 7; NOR ¶ 6.)[2]  Waiting Room provides software products and other technology for the medical industry.  (Compl. ¶¶ 1, 18.)  Defendant Excelsior Insurance Company ("Excelsior") is a stock insurance company organized under the laws of New Hampshire with its principal place of business in Massachusetts.  (NOR ¶ 8.)  Defendant Liberty Mutual Group Inc. ("Liberty Mutual") is a corporation organized under the laws of Massachusetts with its principal place of business in Massachusetts.  (*Id.* ¶ 9.)

1.    **The Excelsior Policy**

Waiting Room procured a Commercial Protector Policy, Policy No. BOP8050067, (Doc. 18-2 ("Ins. Policy")), underwritten by Excelsior (the "Excelsior Policy," "Insurance Agreement," or "Agreement"), covering the period July 20, 2015 to July 20, 2016.  (Compl. ¶ 2; Ins. Policy at 6.)[3]  The Excelsior Policy's liability insuring agreement (pursuant to the New York - Amendatory Endorsement) provides, in pertinent part:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage", "personal injury" or "advertising injury" to which this insurance applies.  We will have the right and duty to defend

---

[1] Because Doc. 1-1 is not consecutively paginated, citations to page numbers in the Complaint refer to the page numbers generated by the Court's electronic case filing system.

[2] "NOR" refers to Defendants' Notice of Removal.  (Doc. 1.)

[3] Because the Excelsior Policy is not consecutively paginated, citations thereto refer to the page numbers generated by the Court's electronic case filing system.

> any "suit" seeking those damages even if the allegations of the "suit" are groundless, false or fraudulent.  We may at our discretion investigate any "occurrence" or offense and settle any claim or "suit" that may result.

(Ins. Policy at 94.)  The insurance applies to bodily injury and property damage only if "[t]he 'bodily injury' or 'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory,'" (*id.* at 80), which includes "[t]he United States of America (including its territories [and] possessions), Puerto Rico and Canada," (*id.* at 88), and "occurs during the policy period," (*id.* at 80).  The insurance applies to "'personal injury' caused by an offense arising out of your business, excluding advertising, publishing, broadcasting or telecasting done by or for you; . . .  but only if the offense was committed in the 'coverage territory' during the policy period."  (*Id.*)  "Bodily injury" is defined as "physical injury, sickness or disease sustained by a person," including "mental anguish, mental injury, shock, fright or death that results from such physical injury, sickness or disease."  (*Id.* at 71.)  "Personal injury" is defined as

> injury, other than 'bodily injury' arising out of one or more of the following offenses: a. False arrest, detention or imprisonment; b. Malicious prosecution; c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, by or on behalf of its owner, landlord or lessor; d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or e. Oral or written publication of material that violates a person's right of privacy.

(*Id.* at 89.)  "'Occurrence' means an accident, including continuous or repeated exposure to substantially the same general harmful conditions."  (*Id.*)[4]

---

[4]  In addition to the stated coverage areas, the Excelsior Policy contains a number of explicit exclusions to Waiting Room's business liability coverage.  Because Defendants do not rely on those exclusions at this stage, but instead will raise them as defenses in their answer should the case survive this motion to dismiss, (*see* Doc. 19 at 10 n.2), I need not refer to them for purposes of this Opinion.

2.      **The Underlying Action**

This matter arises out of what was originally several state court lawsuits filed by five former Waiting Room employees (the "Underlying Plaintiffs") against Waiting Room in 2016 and 2017, which the state court consolidated into one action on September 25, 2017 (the "Underlying Action"). (*See* Doc. 21-1.) The Underlying Plaintiffs allege that Waiting Room's employee, Corey Shuster, who provided information technology services to the company, placed a video camera disguised as a pen in the women's restroom at Waiting Room's offices. (*See* Doc. 18-3 ¶¶ 39, 57; Doc. 18-4 at 1.)5 In or about February 2016, one of the Underlying Plaintiffs discovered the camera and brought it to the attention of her supervisor. (UVC ¶¶ 45-46.) The supervisor confronted Shuster, but did not reprimand him, instead giving him back the camera and its contents and permitting him to leave the premises. (*Id.* ¶ 46-48.) The Underlying Plaintiffs allege that Waiting Room permitted Shuster to delete certain videos and images of them from digital devices, including devices owned or controlled by Waiting Room. (*Id.* ¶ 49.)

The Underlying Plaintiffs further allege that on or about March 5, 2016, Waiting Room's Chief Executive Officer Lawrence Gordon. M.D. met with Shuster, took possession of the computer and other devices held by Shuster, and viewed and deleted or destroyed certain videos and images contained therein. (*Id.* ¶¶ 17, 50.) On March 9, 2016, Gordon convened a meeting of Waiting Room staff, at which time the issue of the discovery of the camera was raised. (*Id.* ¶ 51.) During this meeting, Gordon initially denied, but later admitted, having viewed the footage from the camera. (*Id.* ¶¶ 52-54.) Gordon also admitted at that meeting that Waiting

---

5 Doc. 18-3 (the "UVC") is the underlying Verified Amended Consolidated Complaint submitted on October 26, 2017 by the Underlying Plaintiffs in the state court action, and Doc. 18-4 (the "Order") is the Decision and Order of Judge Sandra B. Sciortino on the state court Defendants' motion to dismiss.

Room was aware that Shuster had placed a camera in the women's restroom three years earlier, and that Waiting Room continued to employ Shuster and allow him access to the restroom despite its awareness of his activities.  (*Id.* ¶¶ 58-59, 62-65.)  Waiting Room did not discipline Shuster for this behavior at the time and did not disclose this knowledge to the Underlying Plaintiffs when they were hired.  (*Id.* ¶¶ 64-66.)  It is further alleged that, at the March 9 meeting, Dr. Gordon demanded secrecy from Waiting Room employees and forbade them from discussing the matter with any person other than those selected by Dr. Gordon.  (*Id.* ¶ 60.)  The Underlying Plaintiffs allege that trade and business reasons motivated the decision to conceal Shuster's past activities and the demand for secrecy.  (*Id.* ¶¶ 61, 67.)

The Underlying Plaintiffs asserted ten causes of action against Waiting Room and its co-defendants.  (*Id.* ¶¶ 78-150.)[6]  In or about 2017, Waiting Room called upon Excelsior to defend and indemnify it and its employees in connection with claims in the Underlying Action.  (Compl. ¶ 21.)  In October 2017, the same month that the UVC was filed, Liberty Mutual issued correspondence acknowledging receipt of the UVC and agreed to defend Waiting Room, subject to a "full and complete reservation of rights."  (*Id.* ¶ 22.)  The reservation of rights stated, in relevant part:

- Coverage exists under the Policy for damages because of "bodily injury" or "property damage" caused by an "occurrence" as defined by the Policy.  We reserve all rights to deny coverage to the extent that Plaintiff does not seek to impose liability on an insured for "bodily injury" as defined under the Policy and New York law.  [Underlying Plaintiff]

---

[6] The ten causes of action were (1) negligent hiring; (2) negligent retention /supervision; (3) negligence; (4) gender discrimination in violation of New York Human Rights Law § 290 *et seq.*; (5) unlawful surveillance in violation of General Business Law § 395-b; (6) invasion of privacy in violation of Civil Rights Law § 51; (7) unlawful surveillance in violation of Labor Law § 203-c(l); (8) intentional infliction of emotional distress ("IIED"); (9) negligent infliction of emotional distress; and (10) constructive discharge /termination.  The Defendants, in addition to Waiting Room, were Waiting Room Solutions, LLC; Lawrence Gordon, M.D.; Old Sycamore Realty LLC (the alleged owner, lessor, or manager of Waiting Room's offices); and Corey Shuster.  (UVC at 1, 11, 13-17, 19-22.)

alleges physical and emotional injuries but this does not meet the definition of "bodily injury" in the Policy.

- Coverage exists under the Policy for damages because of "bodily injury" or "property damage" caused by an "occurrence" as defined by the Policy.  We reserve all rights to deny coverage to the extent that Plaintiff does not seek to impose liability on an insured for an "occurrence" as defined in the Policy.  The thrust of the allegations are that the defendants engaged in intentional and deliberate employment discrimination on the basis of gender arising out of Plaintiff's employment.  This does not constitute an "occurrence" as defined in the Policy.

- Coverage is excluded under the Policy for "bodily injury" or "property damage" expected or intended from the standpoint of the insured.  While we do not believe the Lawsuit involves damages because of "bodily injury" or "property damage" caused by an "occurrence" as defined, to the extent the Lawsuit involves "bodily injury" or "property damage" which is expected or intended from the standpoint of the insured, there is no coverage.

- Coverage is precluded under the Policy for any obligation of the insured under a worker's compensation or any similar law.

- Coverage is precluded under the Policy for "bodily injury" to an employee arising out of and in the course of "employment by the insured or performing duties related to the conduct of the insured business."  Although we do not believe that the Lawsuit seeks to impose liability on the Insured for "bodily injury" this exclusion operates to preclude coverage.

(*Id.* ¶ 22; Doc. 18-5 at 8.)

On November 27, 2017, Waiting Room and Gordon filed a motion to dismiss all claims and causes of action asserted against them in the Underlying Action, and on April 24, 2018, the court granted the motion to dismiss in part, dismissing all claims except the claims for gender discrimination as to three Plaintiffs and IIED as to all Plaintiffs.  (Compl. ¶¶ 24-25; Order at 13.)

In the year that followed, Excelsior and Liberty Mutual (together, "Defendants") participated in mediation along with Waiting Room and extended a settlement offer to the Underlying Plaintiffs.  (Compl. ¶¶ 30-33.)  On or about April 12, 2019, nearly a year after the Court dismissed all but two causes of action in the Underlying Action, Excelsior, through its counsel, served correspondence disclaiming coverage, denying its duty to defend or indemnify

Waiting Room, and withdrawing from its defense of Waiting Room in the Underlying Action.

(Compl. ¶ 34; Doc. 18-6 ("Denial").)  The letter set forth the following reasons:

- Waiting Room Solutions, LLC does not qualify as an insured, and Lawrence Gordon does not qualify as an insured with respect to the conduct of Waiting Room Solutions, LLC[.]

- The remaining claims in the above-mentioned suit against [Waiting Room] do not seek recovery of damages for "bodily injury" caused by an "occurrence"; the remaining claims do not constitute an alleged "occurrence" as that term is defined in the Policy.

- The Employer's Liability exclusion applies and bars coverage for all claims for bodily injury alleged against [Waiting Room] in the above-mentioned suit.

- The Expected or Intended Injury exclusion applies and bars coverage for all of the remaining claims for bodily injury alleged against [Waiting Room] in the above-mentioned suit.

- There are no claims for recover[y] of damages because of "personal injury" or "advertising injury" against [Waiting Room] remaining in the above-mentioned suit.

- It is against the public policy of the State of New York to insure the type of discrimination claims remaining against [Waiting Room] in the above-mentioned suit.

(Denial at 5; Compl. ¶ 34).

### B.   **Procedural History**

Waiting Room filed the instant action in New York Supreme Court, Orange County, on July 19, 2019.  (*See* Compl. at 6).  The Complaint seeks a declaratory judgment that Excelsior is obligated to defend Waiting Room and its co-Defendant, non-party Gordon, in the Underlying Action, and pay all defense costs that have been and will be incurred in the Underlying Action, (Compl. ¶ 42), as well as a declaratory judgment that Excelsior must indemnify Waiting Room and Gordon "pursuant to the terms [of the Insurance Agreement]," (Compl. ¶ 44).[7]

---

[7] In the wherefore clause of paragraph 44 of the Complaint, Plaintiff asks a second time for a declaratory judgment related to the duty to defend, rather than the duty to indemnify.

On August 26, 2019, Defendants removed the instant action to this Court under 28 U.S.C. § 1441, asserting that this Court has subject matter jurisdiction under 28 U.S.C. § 1332.  (NOR ¶¶ 3, 5).  By pre-motion letter dated September 23, 2019, Defendants alerted the Court that they planned to file a motion to dismiss and outlined their arguments.  (Doc. 6.)  On October 2, Waiting Room informed the Court that it planned to file a cross-motion to dismiss for lack of subject matter jurisdiction, which, if granted, would allow the case to proceed in state court. (Doc. 12.)  On October 21, the Court held a pre-motion conference regarding the proposed motions.  (Minute Entry dated Oct. 21, 2019.)  The Court granted Waiting Room leave to amend its Complaint in advance of Defendants' impending motion to dismiss, but Waiting Room apparently chose not to do so.  Defendants filed the motion to dismiss the Complaint on December 12, 2019, (Doc. 17), and Plaintiff filed its cross-motion on January 24, 2020, (Doc. 20).

## II.    LEGAL STANDARD

### A.    Motion to Dismiss for Lack of Subject Matter Jurisdiction

"A federal court has subject matter jurisdiction over a cause of action only when it 'has authority to adjudicate the cause' pressed in the complaint."  *Arar v. Ashcroft*, 532 F.3d 157, 168 (2d Cir. 2008) (quoting *Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 425 (2007)), *rev'd en banc on other grounds*, 585 F.3d 559 (2d Cir. 2009).  "Determining the existence of subject matter jurisdiction is a threshold inquiry, and a claim is 'properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it.'"  *Id.* (citation omitted) (quoting *Makarova v.*

Given the context of the surrounding paragraphs, the court assumes that this is a typographical or copy/paste error.

*United States*, 201 F.3d 110, 113 (2d Cir. 2000)).  "When jurisdiction is challenged, the [party asserting jurisdiction] bears the burden of showing by a preponderance of the evidence that subject matter jurisdiction exists, and the district court may examine evidence outside of the pleadings to make this determination."  *Id.* (citations and internal quotation marks omitted). "The court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff, but jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it."  *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (alteration, citation, and internal quotation marks omitted), *aff'd on other grounds*, 561 U.S. 247 (2010).  When the parties move to dismiss both for lack of subject matter jurisdiction and on other grounds such as failure to state a claim upon which relief can be granted, the Court must address the issue of subject matter jurisdiction first.  *See Rhulen Agency, Inc. v. Alabama Ins. Guar. Ass'n*, 896 F.2d 674, 678 (2d Cir. 1990).

## B.      Motion to Dismiss for Failure to State a Claim

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555 (alteration, citations, and internal quotation marks omitted).  While Federal Rule of Civil Procedure 8 "marks a notable and generous departure

from the hypertechnical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79.

In considering whether a complaint states a claim upon which relief can be granted, the court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and then determines whether the remaining well-pleaded factual allegations, accepted as true, "plausibly give rise to an entitlement to relief." *Id.* at 679. Deciding whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'" *Id.* (alteration omitted) (quoting Fed. R. Civ. P. 8(a)(2)).

When deciding a motion to dismiss, a court is entitled to consider:

> (1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents integral to the complaint and relied upon in it, even if not attached or incorporated by reference, (3) documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint . . . , and (5) facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence.

*Weiss v. Incorporated Village of Sag Harbor*, 762 F. Supp. 2d 560, 567 (E.D.N.Y. 2011) (internal quotation marks omitted).  Defendants filed an attorney declaration in support of their motion to dismiss, (Doc. 18), and attached six exhibits:  the Complaint, (Doc. 18-1), the Excelsior Policy, (Doc. 18-2), the Underlying Verified Consolidated Amended Complaint, (Doc. 18-3), the Underlying Decision and Order dismissing all but two claims, (Doc. 18-4), the Defendants' Initial Reservation of Rights and Partial Disclaimer dated October 17, 2017, (Doc. 18-5), and Defendants' Supplemental Disclaimer dated April 12, 2019, (Doc. 18-6).  Plaintiff also filed an attorney declaration, (Doc. 21), and attached as an exhibit the state court

Consolidation Order dated September 26, 2017, (Doc. 21-2).  All of these documents are incorporated by reference in the Complaint or are otherwise integral to and relied on in the Complaint.  (Compl. ¶¶ 2, 3, 19, 22, 25, 34.)  As such, the Court may consider these documents in ruling on the instant motions.  *Weiss*, 762 F. Supp. 2d at 567.

## III.   DISCUSSION

### A.   Amount in Controversy

Defendants removed this action under 28 U.S.C. § 1441 on the basis of this Court's subject matter jurisdiction over diversity actions set forth in 28 U.S.C. § 1332.  (NOR ¶¶ 3, 5.) The parties agree that this action satisfies § 1332's complete diversity requirement, but Waiting Room argues that Defendants have not shown that the statute's amount-in-controversy requirement of more than $75,000 is satisfied.

The party invoking jurisdiction "has the burden of proving that it appears to a reasonable probability that the claim is in excess of the statutory jurisdictional amount."  *Scherer v. Equitable Life Assurance Soc'y of U.S.*, 347 F.3d 394, 397 (2d Cir. 2003) (internal quotation marks omitted).

To determine the amount in controversy in a declaratory judgment action, a court must look to the potential monetary value of the right.  *Lighton Indus., Inc. v. Allied World Nat'l Assurance Co.*, 348 F. Supp. 3d 167, 181 (E.D.N.Y. 2018); *Certified Multi-Media Sols., Ltd. v. Preferred Contractors Ins. Co. Risk Retention Grp., LLC*, 150 F. Supp. 3d 228, 239 (E.D.N.Y. 2015), *aff'd*, 674 F. App'x 45 (2d Cir. 2017) (summary order); *see Am. Standard, Inc. v. Oakfabco, Inc.*, 498 F. Supp. 2d 711, 717 (S.D.N.Y. 2007) ("In actions seeking declaratory or injunctive relief, the amount in controversy is measured by the value of the object of the litigation.").  "In declaratory judgment cases involving the applicability of an insurance policy to

11

a particular occurrence, the jurisdictional amount in controversy is measured by the value of the underlying claim – not the face amount of the policy." *Amica Mut. Ins. Co. v. Levine*, 7 F. Supp. 3d 182, 187 (D. Conn. 2014) (internal quotation marks omitted). Thus, the issue here is whether there is a "reasonable probability" that the value of the object of the litigation – that is, Defendants' alleged duty to defend and indemnify against the underlying claim – has a value exceeding $75,000. *See Am. Safety Cas. Ins. Co. v. 385 Onderdonk Ave., LLC*, 124 F. Supp. 3d 237, 241 (E.D.N.Y. 2015).

When pleadings are inconclusive as to a jurisdictional requirement such as the amount in the controversy, a court may look outside the pleadings to other evidence in the record, such as affidavits. *See Land v. Dollar*, 330 U.S. 731, 735 n.4 (1947); *United Food & Com. Workers Union, Local 919 v. CenterMark Props. Meriden Square, Inc.*, 30 F.3d 298, 305-06 (2d Cir. 1994). Here, Defendants have submitted evidence clearly showing a more than reasonable probability that the value to Waiting Room of a declaratory judgment far exceeds $75,000.

First, the Underlying Plaintiffs filed suit in New York Supreme Court seeking, for each of their claims, "a sum that exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction" over the causes of action. (UVC at 24.) The maximum jurisdictional limit for civil cases in the County Court of Orange County, which is the next-lowest state court, is $25,000. N.Y. Jud. Law § 190(3). At present, one claim survives for three Underlying Plaintiffs (gender discrimination) and another survives for five Underlying Plaintiffs (IIED). Therefore, at minimum, the Underlying Action here can be said to be seeking

compensation of $200,000.[8]  Thus, by this evidence alone, there is a reasonable probability that Defendants' potential duty to indemnify is worth more than $75,000.[9]

Even assuming that any award in the Underlying Action will be less than $75,000, Defendants' potential duty to defend Waiting Room in the underlying lawsuit independently exceeds that amount.  Waiting Room's own counsel's prediction of the cost of defense through trial, provided a month before Defendants denied coverage, was, at the low end, significantly above $75,000.  (Doc. 25-1.)

Considering the monetary value of both the duty to indemnify and duty to defend, it is all but certain that a declaratory judgment in favor of Waiting Room, if it were to prevail, would be valued at well more than $75,000.  This more than satisfies the "reasonable probability" standard, *Scherer*, 347 F.3d at 397 (internal quotation marks omitted), and therefore this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332.

### B.    Coverage Under the Excelsior Policy

Defendants move to dismiss this action in its entirety under Rule 12(b)(6), arguing that Plaintiff is not entitled to coverage under the Excelsior Policy because all claims conceivably covered by that policy were dismissed from the Underlying Action.  Plaintiff in its opposition

---

[8] Further, Defendants submitted additional evidence that claims similar to those remaining have resulted in jury verdicts far exceeding $75,000 per plaintiff.  (Doc. 26-1 (verdict summary showing $750,000 verdict); 26-2 (verdict summary showing $3,000,000 verdict).)  Plaintiff argues that "[t]he verdicts in these other cases are not dispositive," (Doc. 28 ("P's Reply Mem.") at 3), and it is true that every case is different, but Defendants' burden is not to show dispositively that the claim is worth more than $75,000; they only must show a reasonable probability that that is the case.

[9] Plaintiff contends that Defendants' evidence of the settlement offer in the Underlying Action, (Doc. 25-2), is improper under the Federal Rules of Evidence.  (P's Reply Mem. at 3.)  The Court need not reach this argument because even if that evidence were excluded, Defendants have met their burden.

does not dispute that the remaining claims are not covered, and rather argues that Defendants are estopped from asserting, or waived their right to argue, lack of coverage.  (Doc. 22 ("P's Mem.") at 10-15.)  But Plaintiff in the Complaint contends, "[u]pon information and belief, [that] the Excelsior Policy covered [Waiting Room]," and "[u]pon information and belief, [Waiting Room] would otherwise have been covered, except for the exclusion in the Excelsior Policy."  (Compl. ¶¶ 35-36.)  Accordingly, in an excess of caution, I first address whether Defendants plausibly have a duty to defend and indemnify Waiting Room on the remaining causes of action in the Underlying Action.

### 1.      The Duty to Defend and Indemnify

"[A]n insurer's obligation to indemnify an insured must be based on the insurance agreement." *Jakobson Shipyard, Inc. v. Aetna Cas. & Sur. Co.*, 961 F.2d 387, 389 (2d Cir. 1992).  Under New York law, which the parties agree governs this case, "[a]n insured has the burden of proving that the provisions of a policy provide coverage." *Chase Manhattan Bank, N.A. v. Travelers Grp., Inc.*, 702 N.Y.S.2d 60, 61 (App. Div. 2000); *see Jakobson Shipyard*, 961 F.2d at 389.  This burden requires the insured to show that the allegations of the underlying complaint bring the action within the insuring clause of the policy purchased.  *See First Invs. Corp. v. Liberty Mut. Ins. Co.*, 152 F.3d 162, 165-66 (2d Cir. 1998).

Similarly, the insurer is relieved of its obligation to defend the insured only if there is "no possible factual or legal basis" on which the insurer might eventually be held to be obligated to indemnify the insured, "or the insurer can show that the allegations of the [underlying] complaint are solely and entirely within the policy exclusions, and that the allegations, *in toto*, are not subject to any other interpretation." *Brooklyn L. Sch. v. Aetna Cas. & Sur. Co.*, 849 F.2d 788, 789 (2d Cir. 1988) (internal quotation marks omitted); *see Brooklyn Ctr. for Psychotherapy, Inc.*

*v. Phila. Indem. Ins. Co.*, 955 F.3d 305, 310 (2d Cir. 2020) (insurer's obligation to defend terminates only if "no possible factual or legal basis" on which it might be obligated to indemnify under any provision of policy).

### 2.    The Excelsior Policy

Insurance policies "are interpreted according to general rules of contract interpretation." *Olin Corp. v. Am. Home Assurance Co.*, 704 F.3d 89, 98 (2d Cir. 2012).  Courts "may not frustrate the intentions of the parties by altering the contract's terms or by reading into the contract meanings not contemplated by the parties.  Instead, [courts] give the words of the agreement their ordinary and plain meaning." *Jakobson Shipyard*, 961 F.2d at 389.  An insurance policy "must be construed to effectuate the intent of the parties as derived from the plain meaning of the policy's terms." *Andy Warhol Found. for Visual Arts, Inc. v. Fed. Ins. Co*., 189 F.3d 208, 215 (2d Cir. 1999).  "Insurance policies are read in light of common speech and the reasonable expectations of a businessperson." *United Nat'l Ins. Co. v. Granoff, Walker & Forlenza, P.C.*, 598 F. Supp. 2d 540, 546 (S.D.N.Y. 2009) (internal quotation marks omitted).  "Unambiguous provisions" in the agreement are interpreted according to their "plain and ordinary meaning." *Lavanant v. Gen. Accident Ins. Co. of Am*., 79 N.Y.2d 623, 629 (1992).  If a provision is ambiguous, however, it is construed against the insurer.  *Breed v. Ins. Co. of N. Am.*, 46 N.Y.2d 351, 353 (1978).  "[A]mbiguity exists where the terms of an insurance contract could suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." *Fabozzi v. Lexington Ins. Co.*, 601 F.3d 88, 90 (2d Cir. 2010) (internal quotation marks omitted).

The Insurance Agreement explicitly provides coverage for "bodily injury," "advertising injury," "property damage," and "personal injury," each of which is specifically defined.  (Ins. Policy at 80.)  Any possible coverage for the Underlying Action would arise under "bodily injury" or "personal injury."

The Agreement's definition of "personal injury" includes only non-bodily injury

arising out of one or more of the following offenses:  a. False arrest, detention or imprisonment; b. Malicious prosecution; c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, by or on behalf of its owner, landlord or lessor; d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or e. Oral or written publication of material that violates a person's right of privacy.

(*Id.* at 89.)  The plain language of this narrow provision shows that the parties did not intend that claims for gender discrimination and IIED – which do not relate to arrest, prosecution, entry by a landlord, slander, or publication – would be covered under this provision.[10]

"Bodily injury," in contrast, is defined broadly as "physical injury, sickness or disease sustained by a person," including "mental anguish, mental injury, shock, fright or death that results from such physical injury, sickness or disease."[11]  (*Id.* at 71.)  The Excelsior Policy further specifies, however, that it only covers "'bodily injury' . . . caused by an 'occurrence.'"

---

[10] At first glance one might think that the remaining claims in the Underlying Action could fall under this provision, because Shuster conceivably "published" the privacy-invading photos and videos when they were posted on the internet.  (UVC ¶ 76).  But there is no allegation that Waiting Room or Gordon were involved in this publication.  Additionally, the state court in the Underlying Action allowed the IIED claim to go forward against Waiting Room and Gordon specifically on the theory that Gordon tried to impose secrecy at the March 9 meeting, not based on publication of the videos.  (Order at 11-12.)  As such, these two claims are not covered by the personal injury provision.  Neither party suggests otherwise.

[11] Because Defendants have not raised the issue, the Court assumes for the purpose of this motion that the injuries alleged in the Underlying Complaint constitute "bodily injury" within the meaning of the Policy.

(*Id.* at 80.)  An "occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."  (*Id.* at 89.)  "Accident" is commonly defined in contract law to be "an event or condition occurring by chance or arising from unknown or remote causes."  *Jakobson Shipyard*, 961 F.2d at 389 (internal quotation marks omitted).  New York courts have interpreted the term to mean something "unexpected, unusual, and unforeseen," and "a sudden and instant happening . . . assignable to something catastrophic or extraordinary."  *Michaels v. City of Buffalo*, 85 N.Y.2d 754, 757-58 (1995) (internal quotation marks omitted).  In an insurance context, an accident "is not given a narrow, technical definition by the law.  It is construed, rather, in accordance with its understanding by the average [person] who, of course, relates it to the factual context in which it is used."  *Miller v. Cont'l Ins. Co.*, 40 N.Y.2d 675, 676 (1976) (internal quotation marks omitted).

Waiting Room does not dispute that, as of April 24, 2018, the court in the Underlying Action dismissed all the causes of action except the Fourth Cause of Action, which alleges gender discrimination under the Human Rights Law, N.Y. Exec. Law§ 290 *et seq*., as alleged by three Underlying Plaintiffs, and the Eighth Cause of Action for IIED, as alleged by all five Underlying Plaintiffs.  To determine whether these causes of action are plausibly covered by the Insurance Agreement, triggering Defendants' duty to defend, the Court must analyze whether these claims conceivably arise from an "occurrence."

Just because a claim arises from an intentional act does not necessarily take it outside the scope of an "occurrence."  New York courts analyzing this question have "focused on the nexus between an intentional act and the resulting damage."  *City of Johnstown v. Bankers Standard Ins. Co.*, 877 F.2d 1146, 1150 (2d Cir. 1989).  "Recovery will be barred only if the insured intended the damages, or if it can be said that the damages were, in a broader sense, 'intended'

by the insured because the insured knew that the damages would flow directly and immediately

from its intentional act." *Id.* (internal citation omitted) (citing *McGroarty v. Great Am. Ins. Co.*,

36 N.Y.2d 358, 363-65, (1975)).  "In those instances, coverage is precluded because the damages

are not 'accidental.'" *Id.* at 1151; *see Brooklyn Ctr. for Psychotherapy*, 955 F.3d at 310-11.  An

important "distinction is drawn between damages which flow directly and immediately from an

intended act, thereby precluding coverage, and damages which accidentally arise out of a chain

of unintended though expected or foreseeable events that occurred after an intentional act." *City

of Johnstown*, 877 F.2d at 1150 (internal quotation marks omitted).  Therefore, "although an

*intentional* act may ultimately cause certain damages, those damages may, under New York law,

be considered accidental if the total situation could be found to constitute an accident." *Id.*

(emphasis in original) (internal quotation marks omitted); *see also Graphic Arts Mut. Ins. Co. v.

Pine Bush Cent. Sch. Dist.*, 73 N.Y.S.3d 241, 245 (App. Div. 2018) ("An act that is intentionally

committed or performed may still be considered an accident within the meaning of an insurance

policy, as long as the insured did not expect or intend the harm caused.").

    a.    <u>Gender Discrimination</u>

New York courts hold that the "occurrence language in the Policy does not require

insurers to defend suits alleging solely disparate-treatment discrimination." *Brooklyn Ctr. for

Psychotherapy*, 955 F.3d at 312.  The New York Superintendent of Insurance has explained that

"[d]iscrimination based upon disparate treatment is an *intentional* wrong whose resultant harm

flows *directly* from the acts committed, and liability coverage for it is impermissible" as a matter

of New York public policy.  N.Y.S. Dep't of Fin. Servs., Circular Letter No. 1994-6, Insurance

Coverage for Discrimination Claims Based Upon Disparate Impact and Vicarious Liability

(1994), 1994 WL 16306026 (emphasis added).  "[I]t cannot be said that the mental and

18

emotional injuries alleged by [an underlying plaintiff] as flowing directly from [the insured's] intentional discriminatory practice were unexpected and unforeseen by . . . the insured." *Mary & Alice Ford Nursing Home Co. v. Fireman's Ins. Co. of Newark, N.J.*, 446 N.Y.S.2d 599, 601 (App. Div. 1982), *aff'd*, 57 N.Y.2d 656 (1982).  When "injuries alleged as a result of plaintiff's discriminatory practice were neither unexpected nor unforeseen, but rather . . . were the direct and natural consequence of plaintiff's intentional act," they will not constitute an occurrence.  *Id.* This is because "the proof will necessarily establish that there was no accident within the meaning of the insurance policies in question and, therefore, defendant will not be liable to indemnify plaintiff."  *Id.*  Ultimately, because a "defendant cannot be liable to indemnify plaintiff for any damages it might have to pay as a result of [an underlying] action, defendant has no duty to defend plaintiff in that action."  *Id.*

Here, the fact allegations and remaining claims in the Underlying Complaint support only a disparate treatment, rather than a more "accidental" disparate impact, gender discrimination claim.  Additionally, the state court held that "[c]laims sounding in negligence against an employer for its failure to prevent the intentional torts of an employee are . . . barred by the exclusive remedy provision [of the Workers' Compensation Law], unless the tort was perpetrated at the employer's direction or instigation," (Order at 8 (internal quotation marks omitted)), and thus by definition found the remaining claims to be of an intentional nature.

Further, the state court allowed the gender discrimination claim under New York Human Rights Law to proceed based on acts that occurred after the discovery of the pen camera:

> [T]he Complaint alleges that, after the pen camera was discovered in the women's restroom in February 2016, defendant Gordon, the principal of WRS, convened a staff meeting on March 9, 2016.  At that meeting, the Complaint alleges that Gordon demanded secrecy regarding the incident.  Taking these allegations as true, as the Court must, the Complaint sufficiently alleges that the remaining plaintiffs' work environment

thereby became permeated with discriminatory behavior so pervasive as to alter the
conditions of their employment and create an abusive environment.

(*Id.* at 9-10.)  The theory on which the state court found the gender discrimination claim

sufficient is one alleging damages resulting directly from an intentional act.

The underlying allegations clearly accuse Waiting Room and Gordon of specifically

engaging in "intentional" gender discrimination.  Thus, the discrimination claims remaining in

the Underlying Action cannot be deemed "accidental" and accordingly cannot arise from an

alleged "occurrence."  They are therefore not covered under the Excelsior Policy.

b.    IIED

As noted, the state court dismissed all claims based on negligence and the only remaining

common law tort was IIED caused by alleged specific intentional conduct on Waiting Room's

part.  Under New York law, conduct underlying intentional torts usually will not constitute an

"occurrence."  *See Bingham v. Atl. Mut. Ins. Co.*, 626 N.Y.S.2d 807, 808 (App. Div. 1995) (no

duty to defend for mental anguish allegedly caused by intentional conduct, even though an

unintentional result); *Royal Indem. Co. v. Miller*, 591 N.Y.S.2d 652, 652-53 (App. Div. 1991)

(intentional assault is not an "occurrence").  The IIED claim, like the gender discrimination

claim, was allowed to go forward against Waiting Room and Gordon based on the meeting and

Gordon's demand for secrecy, which were intentional acts alleged to have directly harmed the

Underlying Plaintiffs.  (Order at 11-12.)  By its nature, the intentional conduct underlying the

IIED claim here does not constitute an "occurrence," and thus it is not covered under the

Excelsior Policy.  *See Swan Consultants, Inc. v. Travelers Prop. Cas. Co.*, 360 F. Supp. 2d 582,

590 (S.D.N.Y. 2005); *First Fin. Ins. Co. v. XLNT Recovery Specialist, Inc.*, No. 98-CV-5033,

2000 WL 943499, at *4 (S.D.N.Y. July 7, 2000); *Brooklyn L. Sch. v. Aetna Cas. & Sur. Co.*, 661

F. Supp. 445, 454 (E.D.N.Y. 1987), *aff'd*, 849 F.2d 788.

***

Waiting Room offers no facts in its Complaint to support its conclusory statement that "[u]pon information and belief, the Excelsior Policy covered [Waiting Room]," (Compl. ¶ 35), nor does it provide any basis for its information and belief. *See Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (noting that unless "the facts are peculiarly within the possession and control of the defendant," the belief must be "based on factual information that makes the inference of culpability plausible"). In its two memoranda of law, Waiting Room does not even dispute, much less refute, Defendants' argument that the discrimination and IIED causes of action do not constitute "occurrences" as defined by the Excelsior Policy. I agree that these remaining claims in the Underlying Action do not arise from an "occurrence" and are not covered by the Excelsior Policy. Because there is "no possible factual or legal basis" on which the insurer might eventually be held obligated to indemnify the insured under the Excelsior Policy, Defendants do not have a duty to defend or indemnify Waiting Room under that policy.

### C. <u>Waiver and Estoppel</u>

Waiting Room instead argues that Defendants nevertheless have a duty to defend and indemnify because they have waived any right they may have had to deny coverage and/or are estopped from doing so. (P's Mem. at 10-15). In its Complaint, Waiting Room alleges that "[u]pon information and belief, Defendants had an obligation to give notice of disclaimer as soon as reasonably possible after it learned of the grounds for disclaimer of liability or denial of coverage," that "over one year elapsed between the dismissal of all non-intentional claims in the [Underlying Action] and the [preparation of the] Denial of Coverage letter," that "Defendants' Denial of coverage was untimely" and that "Excelsior's right to disclaim has been waived." (Compl. ¶¶ 37-40.)

In the insurance context, New York law defines waiver as "a voluntary and intentional relinquishment of a known right.  Waiver may be found where there is direct or circumstantial proof that the insurer intended to abandon the defense."  *New York v. AMRO Realty Corp.*, 936 F.2d 1420, 1431 (2d Cir. 1991) (internal citation and quotation marks omitted).  Waiver of rights under an insurance contract "should not be lightly presumed."  *Globecon Grp., LLC v. Hartford Fire Ins. Co.*, 434 F.3d 165, 176 (2d Cir. 2006) (internal quotation marks omitted).  A waiving party must have "lulled the other party into sleeping on its rights under the insurance contract." *Id.* (internal quotation marks and alteration omitted).

In certain instances, an insurance company may also be "estopped from denying or disclaiming coverage where the proper defending party relied to its detriment on that coverage." *Yoda, LLC v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 931 N.Y.S.2d 18, 20 (App. Div. 2011).  "The purpose of equitable estoppel is to preclude a person from asserting a right after having led another to form the reasonable belief that the right would not be asserted, and loss or prejudice to the other would result if the right were asserted."  *In re Shondel J. v. Mark D.*, 7 N.Y.3d 320, 326 (2006).  This doctrine is applied "as a matter of fairness" in order "to prevent someone from enforcing rights that would work injustice on the person against whom enforcement is sought and who, while justifiably relying on the opposing party's actions, has been misled into a detrimental change of position."  *Id.*

An insurer's valid reservation of its right to deny coverage or assert a defense, however, all but forecloses estoppel and waiver arguments.  *Globecon Grp.*, 434 F.3d at 176; *Hutton Constr. Co. v. County of Rockland*, 52 F.3d 1191, 1193 (2d Cir. 1995); *Steadfast Ins. Co. v. Stroock & Stroock & Lavan LLP*, 277 F. Supp. 2d 245, 254 (S.D.N.Y. 2003); *Raniolo v. Travelers Indem. Co.*, 718 N.Y.S.2d 884, 884 (App. Div. 2001).  "When an insurer reserves its

right to deny coverage, estoppel and waiver may not be inferred." *Steadfast Ins. Co.*, 277 F.

Supp. 2d at 254; *see Liberty Mut. Fire Ins. Co. v. J.&S. Supply Corp.*, 13-CV-4784, 2015 WL

13649824, at *9 (S.D.N.Y. June 29, 2015); *K. Bell & Assocs., Inc. v. Lloyd's Underwriters*, 92-

CV-5249, 1997 WL 96551, at *7 (S.D.N.Y. Mar. 5, 1997), *aff'd*, 129 F.3d 113 (2d Cir. 1997)

(unpublished table decision).

  "A reservation of rights letter must give fair notice to the insured that the insurer intends

to assert defenses to coverage or to pursue a declaratory relief action at a later date." *United*

*Nat'l Ins. Co. v. Waterfront N.Y. Realty Corp.*, 948 F. Supp. 263, 268 (S.D.N.Y. 1996).  Here,

Waiting Room makes no allegation and pleads no facts in its Complaint that the initial

reservation of rights letter from October 2017 was defective in any way.  In fact, Waiting Room

acknowledges in its Complaint that that letter was "a full and complete reservation of rights,"

(Compl. ¶ 22), and the letter itself shows as much, (*see* Doc. 18-5 at 2).  Waiting Room does not

suggest what other language the letter ought to have contained.  I thus reject its suggestion, (P's

Mem. at 12), that the letter was insufficiently specific to put Waiting Room on notice of

Excelsior's views of its obligations under the Excelsior Policy.

  It is true that under New York law, "an insurer, who undertakes the defense of an insured,

may be estopped from asserting a defense to coverage, no matter how valid, if the insurer

unreasonably delays in disclaiming coverage and the insured suffers prejudice as a result of that

delay." *Bluestein & Sander v. Chi. Ins. Co.*, 276 F.3d 119, 122 (2d Cir. 2002) (citing *Globe*

*Indem. Co. v. Franklin Paving Co.*, 430 N.Y.S.2d 109 (App. Div. 1980) (where insurer

undertakes defense of action, with knowledge of facts constituting defense to coverage, and

thereby deprives insured of control of his defense, insurer is estopped from denying coverage)).

"Prejudice may be presumed where an insurer, though . . . not obligated to provide coverage,

*without asserting policy defenses or reserving the privilege to do so*, undertakes the defense of

the case, in reliance on which the insured suffers the detriment of losing the right to control its

own defense." *Sparta Ins. Co. v. Tech. Ins. Co.*, 751 F. App'x 32, 34 (2d Cir. 2018) (summary

order) (internal quotation marks omitted) (emphasis added).  Here, because Waiting Room does

not challenge that Excelsior validly reserved its rights in October 2017, and because the

reservation-of-rights letter specifically permitted Waiting Room and Gordon to select their own

counsel, (Doc. 18-5 at 9), its common law waiver and estoppel arguments fail as a matter of

law.[12]

Next, Waiting Room relies upon New York Insurance Law § 3420(d)(2) for a statutory

waiver argument.  Section 3420(d)(2) provides as follows:

> If under a liability policy issued or delivered in this state, an insurer shall disclaim
> liability or deny coverage for death or bodily injury arising out of a motor vehicle
> accident or any other type of accident occurring within this state, it shall give written
> notice as soon as is reasonably possible of such disclaimer of liability or denial of
> coverage to the insured and the injured person or any other claimant.

But this statutory waiver provision only applies to disclaimers of coverage based on exclusions

or breaches of policy conditions.  *In re Worcester Ins. Co. v Bettenhauser*, 95 N.Y.2d 185, 188-

89 (2000).  Timely disclaimer under the statute is not required where, as here, the claim falls

outside the scope of coverage.  *Id*. at 189.  This is because "[u]nder those circumstances, the

insurance policy does not contemplate coverage in the first instance, and requiring payment of a

claim upon failure to timely disclaim would create coverage where it never existed."  *Id.* at 188;

*see Ill. Union Ins. Co. v. Midwood Lumber & Millwork, Inc.*, 13-CV-2466, 2014 WL 639420, at

---

[12] Even if the reservation of rights was flawed, "the [New York] Court of Appeals has only found
estoppel in cases where, by the time the insurer attempted to avoid liability under the policy, the
underlying litigation against the insured had reached a point where the course of the litigation
had been fully charted."  *206-208 Main St. Assocs., Inc. v. Arch Ins. Co.*, 965 N.Y.S.2d 31, 34
(App. Div. 2013).  Plaintiff does not argue, and there is no indication, that that is the case here.

*9-10 (E.D.N.Y. Feb. 18, 2014); *State Farm Fire & Cas. Co. v. Whiting*, 862 N.Y.S.2d 420, 421

(App. Div. 2008); *Mass. Bay Ins. Co. v. Nat'l Sur. Corp.*, 626 N.Y.S.2d 271, 273 (App. Div.

1995); *Ward v. Sec. Mut. Ins. Co.*, 597 N.Y.S.2d 227, 228 (App. Div. 1993).

Here, as discussed above, the remaining claims in the Underlying Action do not allege

"bodily injury" caused by an "occurrence," and thus the claim does not fall within the coverage

of the Excelsior Policy.  No policy exclusion or breach of condition is implicated.  Because the

claims fall outside the scope of coverage in the first instance, the waiver doctrine pursuant to

§ 3420(d)(2) does not apply.[13]

Accordingly, despite having waited a year to deny coverage, Defendants have not waived

their right to deny and are not estopped from doing so.

## IV.   CONCLUSION

For the reasons stated above, Defendants' motion to dismiss is GRANTED.[14]  Plaintiff's

cross-motion to dismiss is DENIED.  The Clerk of Court is respectfully directed to terminate the

pending motions, (Docs. 17, 20), and close the case.

---

[13] The cases Waiting Room cites, (P's Mem. at 10-15), are inapplicable, as all involve situations where the insurer sought to deny coverage based on an exclusion or breach of a policy condition, and not because the claim fell outside the scope of the insurance policy itself.  *See, e.g.*, *Plotkin v. Republic-Franklin Ins. Co.*, 113 N.Y.S.3d 133, 136, 137-38 (App. Div. 2019) (insurer disclaimed coverage based on "a failure to comply with a condition precedent which, as a matter of law, vitiates the contract") (internal quotation marks omitted); *Guzman v. Nationwide Mut. Fire Ins. Co.*, 880 N.Y.S.2d 302, 302-03 (App. Div. 2009) (disclaiming coverage based on late notice of the underlying lawsuit); *Stout v. 1 E. 66th St. Corp.*, 911 N.Y.S.2d 696 (Sup. Ct. 2010) (unpublished table decision) (analyzing delay in disclaiming coverage for an additional insured based on failure to provide timely notice of occurrence, claim, and suit), *aff'd in relevant part*, 935 N.Y.S.2d 49, 54-55 (App. Div. 2011).

[14] Because I find that the Complaint is dismissed in its entirety based on Rule 12(b)(6), I need not reach Defendants' arguments that Plaintiff is not entitled to recover its attorneys' fees incurred in the prosecution of the instant action and that Liberty Mutual is entitled to dismissal because Excelsior is the sole obligated insurer.

**SO ORDERED.**

Dated:  September 9, 2020
          White Plains, New York

_____
CATHY SEIBEL, U.S.D.J.